UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

FRANK E. WALSH, JR.,

                       Plaintiff,

        - against -

ILLINOIS UNION INSURANCE COMPANY,

                Defendant.

------------------------------------------------------------ x

1:10 cv. 01390 (WHP)

**COMPLAINT**

**PLAINTIFF DEMANDS
TRIAL BY JURY**

Plaintiff, Frank E. Walsh, Jr., by his undersigned attorneys, Warner Partners, P.C., for his Complaint against defendant, Illinois Union Insurance Company, alleges as follows:

## THE PARTIES

1.      Plaintiff is a citizen of the State of Florida.

2.      Plaintiff is a former Director of Tyco International, Ltd..

3.      Upon information and belief, defendant is an insurance company incorporated under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois.

4.      Upon information and belief, during all relevant times herein defendant was, and continues to be, licensed to do business in the State of New York.

5.      Upon information and belief, during all relevant times herein, defendant did, and continues to do, business in the State of New York.

6.      Upon information and belief, during all relevant times herein, defendant transacted business in the State of New York in connection with the subject matter of this Complaint.

7.      Upon information and belief, during some or all relevant times herein, defendant transacted insurance business with Tyco, including without limitation the insurance transactions

set forth in this Complaint, utilizing the name of ACE USA as a marketing identifier and *inter alia* utilizing ACE USA to receive all Notices to Insurers. .

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action under 28 U.S.C. § 1332 based on diversity of citizenship of the parties, as the matter in controversy exceeds $75,000, exclusive of interest and costs.

9.      Venue is proper in this district under 28 U.S.C. § 1391(a)(2) or, alternatively, under 28 U.S.C. § 1391(a)(3), as (a) a substantial part of the events or omissions giving rise to plaintiff's claims occurred in this district; or (b) in any event, defendant is subject to personal jurisdiction in this district as set forth below.

10.     This Court has personal jurisdiction over defendant pursuant to CPLR § 301 and § 302, as defendant is doing business and transacting business within this State.

## THE DIRECTORS & OFFICERS INSURANCE POLICIES

11.     Defendant issued to Tyco *inter alia* an Excess Directors & Officers Liability Insurance Policy No. DOX 648558 (the "Illinois Union Policy"), providing insurance coverage, including by further endorsement, for the Policy Period March 15, 2001 to March 15, 2003.

12.     Plaintiff was a duly elected director of Tyco from 1992 to 2002 and is an "Insured Person" under the Illinois Union Policy, which provides insurance coverage for plaintiff and other insured individuals and entities as set forth therein.

13.     The Illinois Union Policy provides limits of liability of $25 million in excess of two underlying policies of insurance purchased by Tyco, to wit:  the primary Federal Insurance Company Executive Protection Policy, No. 8121-34-42-H (the "Federal Followed Policy"), providing insurance coverage for the Policy Period from March 15, 2001 to March 15, 2003,

with a $25 million limit of liability, and the Twin City Fire Insurance Excess Financial Products
Insurance Policy No. NDA 0144927-01 (the "Twin City Excess Policy"), providing insurance
coverage for the Policy Period March 15, 2001 to March 15, 2003, with a $25 million limit of
liability.

14.     Both the Federal Followed Policy and the Twin City Excess Policy provide
insurance coverage for plaintiff and other insured individuals and entities as set forth therein.
The Federal Followed Policy, for example, defines an "Insured Person" under said Policy as
"[a]ny person who has been, now is, or shall become . . . a duly elected director . . . of the
Insured Organization." Declarations at 1. The "Insured Organization" is defined as "Tyco
International Ltd and its subsidiaries." *Id.*

15.     The Illinois Union Policy refers to the Federal Followed Policy as the "Followed
Policy" and provides that it "follow[s] the terms and conditions of the" Federal Followed Policy:

> This policy is subject to the same . . . terms, definitions, conditions,
> exclusions and limitations (except as regards the premium, the limits of
> liability, the policy period and except as otherwise provided herein) as are
> contained in or as may be added to the Followed Policy . . .

Illinois Union Policy, IV(A).

16.     The Illinois Union Policy sometimes refers to the Federal Followed Policy and the
Twin City Excess Policy collectively as the "Underlying Policies".

17.     The Illinois Union Policy refers to the Twin City Excess Policy as "The Hartford"
excess policy.

18.     The Illinois Union Policy provides that in the event of the "exhaustion" of the
Underlying Policies, then "this policy shall . . . continue in force as primary insurance . . ." *Id.* at
II(B).

19.     The Federal Followed Policy includes insurance coverage *inter alia* for "Loss" that plaintiff becomes legally obligated to pay on account of any "Claim" against him for any "Wrongful Act" alleged.  Thus, defendant, through its incorporation of the Federal Followed Policy in the Illinois Union Policy, agreed to:

> pay on behalf of each of the Insured Persons all Loss for which the Insured Person is not indemnified by the Insured Organization and which the Insured Person becomes legally obligated to pay on account of any Claim first made against him, individually or otherwise, during the Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act committed, attempted, or allegedly committed or attempted by such Insured Person before or during the Policy Period.

*See, e.g.,* Federal Followed Policy, Executive Liability and Indemnification Coverage Section at p. 3 of 11.

20.     The Federal Followed Policy defines "Loss" to mean "the total amount which any Insured Person becomes legally obligated to pay on account of each Claim and for all Claims in each Policy Period and the Extended Reporting Period, if exercised, made against them (*sic*) for Wrongful Acts for which coverage applied, including, but not limited to, damages, judgments, settlements, costs and Defense Costs." *Id.* at para. 18 (Definitions).

21.     The Federal Followed Policy defines "Claims" to include a "written demand for monetary damages." *Id.*  It defines "Defense Costs" to include "reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, or fees of the directors, officers, or employees of the Insured Organization) incurred in defending or investigating Claims and the premium for appeal, attachment, or similar bonds." *Id.*  It defines "Wrongful Act" as meaning "any error, misstatements, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, by an Insured Person, individually or otherwise,

4

in his Insured Capacity, or any matter claimed against him solely by reason of his serving in such Insured Capacity." *Id.*

22.     The Illinois Union Policy states that "[t]he terms 'Claim' and 'Loss' have the same meanings in this policy as are attributed to them in the Followed Policy" (at III(A) (Definitions)).

## PLAINTIFF HAS SUFFERED LOSSES
## FOR WHICH HE IS ENTITLED TO INDEMNIFICATION
## UNDER THE ILLINOIS UNION POLICY

23.     Lawsuits and proceedings have been brought against plaintiff and others by public and private plaintiffs alleging a variety of Wrongful Acts and *inter alia* seeking to impose civil liability on plaintiff (collectively, the "Underlying Lawsuits").

24.     The Underlying Lawsuits constitute various "Claims" as that term is defined in the Federal Followed Policy and as followed by the Illinois Union Policy.

25.     The Underlying Lawsuits are within the scope of coverage of the Illinois Union Policy.

26.     As a result of the Underlying Lawsuits, plaintiff had to retain defense counsel and has suffered "Loss," as defined in the Federal Followed Policy and as followed by the Illinois Union Policy, including, but not limited to, Defense Costs for which defendant is obligated to indemnify plaintiff.

27.     Also as a result of the Underlying Lawsuits, plaintiff has suffered additional "Loss," as defined in the Federal Followed Policy and as followed by the Illinois Union Policy, including, but not limited to, settlements for which defendant is obligated to indemnify plaintiff.

28.     The above Losses of plaintiff, for which he has not been indemnified, include (a) Defense Costs in an amount to be proven at trial, but not less than $1,989,744; and (b) settlements totaling $16,595.000.

29.     The Federal Followed Policy and the Twin City Excess Policy (collectively, the "Underlying Policies") are exhausted.

30.     Notice of the Underlying Lawsuits against plaintiffs and others, as well as notice of Defense Costs and of potential and actual settlements, has been given to defendant.

31.     Tyco has not indemnified plaintiff for any of the Losses suffered by him and being claimed herein.

32.     Plaintiff is entitled to coverage and indemnification for his Losses from defendant under the Illinois Union Policy, up to the $25 million limit of that Policy, to the extent plaintiff has not already been indemnified for those Losses pursuant to the Underlying Policies.

### DEFENDANT IMPROPERLY ATTEMPTED TO MODIFY THE ILLINOIS UNION POLICY AFTER THE EVENTS FOR WHICH PLAINTIFF INCURRED LOSSES, SO AS TO REDUCE THE COVERAGE AVAILABLE

33.     Upon issuing the Illinois Union Policy to Tyco, defendant had an obligation not to take any action with regard to that Policy that it knew or had reason to know would be likely to prevent, undermine or restrict plaintiff from obtaining the benefits of the Illinois Union Policy to which plaintiff would have otherwise been entitled, including but not limited to the right to reimbursement of Losses, including Defense Costs and settlements

34.     Defendant knew or had reason to know that the primary purpose of Tyco, and companies like Tyco, in securing policies such as the Illinois Union Policy is to provide insurance coverage for claims against Directors and Officers of Tyco, and that those Directors and Officers rely on the coverage provided under the Illinois Union Policy to respond to claims

such as the Underlying Lawsuits. Defendant and Tyco also knew that without such coverage it would be difficult to get qualified persons, including without limitation plaintiff, to serve as Directors and Officers of the company.

35.     On information and belief, claims by third parties against Directors and Officers of Tyco, similar to those asserted in the Underlying Lawsuits, including without limitation claims against plaintiff, began to be asserted in February of 2002.

36.     At the time the above claims began to be asserted, plaintiff was an "Insured Person" and an intended beneficiary of the coverage provided by the Illinois Union Policy, which was in full force and effect as to him and others.

37.     The continued assertion of the above claims by the initial litigants and others became the Underlying Lawsuits.

38.     As a result of receiving notice of the commencement of the above claims, and of the allegations underlying those claims, defendant knew, or should have known, that it was highly likely that the Underlying Lawsuits would be filed and that plaintiff would incur Losses that would be covered under the Illinois Union Policy and for which plaintiff would be seeking coverage from defendant.

39.     Upon information and belief, defendant also knew, or should have known, including from its communications with Tyco, that Tyco intended not to indemnify plaintiff (and certain others) against the Losses incurred in responding to the Underlying Lawsuits, thereby increasing the likelihood that plaintiff would seek indemnification for these Losses from the Illinois Union Policy.

40.     Upon information and belief, with the above knowledge defendant sought to cancel and/or modify the coverage provided under the Illinois Union Policy in order to avoid paying Losses, including Losses reasonably expected to be incurred by plaintiff.

41.     Upon information and belief, in pursuit of the foregoing, defendant negotiated a new Endorsement to the Illinois Union Policy with Tyco to limit the coverage available under said Policy for individual insureds (including plaintiff).

42.     Defendant undertook the above negotiations with Tyco without the knowledge or consent of plaintiff, who was relying on the Illinois Union Policy, among others, to pay Losses.

43.     Defendant and Tyco thereafter negotiated Endorsement No. 6 to the Illinois Union Policy which reduced the coverage available to plaintiff for Losses incurred in responding to the Underlying Lawsuits.  Specifically, Endorsement No. 6 purports to limit the obligation of defendant to indemnify an individual insured, including plaintiff, against Losses incurred in responding to claims, stating as follows (emphasis added):

> 1. Section II, Limit of Liability, is deleted in its entirety and the following is inserted: . . .
>
>> 1. The maximum aggregate liability of the Insurer under this policy shall be $25,000,000 **if the Insured Company** or its subsidiaries **fails or refuses to indemnify a natural person Insured** for all or any part of a Loss in a Claim **solely on account of** Financial Impairment, **or entry, in a court of law, of a final and non-appealable order prohibiting such indemnification**.  The maximum aggregate limit of liability of $25,000,000 under this paragraph shall be part of and not in addition to the $12,500,000 under paragraph 2 immediately below….;
>>
>> 2. For all other Loss and Claims under this policy, the maximum aggregate limit of liability of the Insurer under this policy shall be 50% of every Loss up to a maximum aggregate limit of liability of $12,500,000 for all Loss and Claims….

*****

8

44.     The above bar to coverage does not exist under the Federal Followed Policy, which requires simply that plaintiff not have been indemnified by Tyco for the Losses.

45.     The absence of the above bar to coverage in the Federal Followed Policy (and in the pre-Endorsement Illinois Union Policy) demonstrates the intent of D&O coverage to provide an Insured Person with prompt and direct indemnification for Losses that are not paid by the corporation, in this instance Tyco.

46.     Defendant knew or should have known that the application of Endorsement No. 6 meant that individual insureds (including plaintiff) adversely affected by that Endorsement would find themselves without significant benefits of the insurance coverage that was in place at the time the events alleged in the Underlying Lawsuits occurred.

47.     On information and belief, defendant knew or should have known that adversely-affected individual insureds, including plaintiff, would not agree to the cancellation and/or modification of the coverage as was done in Endorsement No. 6.

48.     Defendant did not notify plaintiff of the negotiation for Endorsement No. 6 or insure that Tyco notify plaintiff thereof.

49.     As a result of all of the foregoing, defendant knew or should have known that Tyco, in negotiating changes to the Illinois Union Policy which purported to reduce the individual insureds' rights to coverage, was not acting as an authorized agent of the individual insureds, including plaintiff, who might be adversely affected by Endorsement No. 6.

50.     Defendant had an obligation to treat all insureds of the Illinois Union Policy, including plaintiff, in a manner that provided them with all the benefits of insurance coverage for claims covered by the Illinois Union Policy, especially after the events upon which the Underlying Lawsuits were based had already occurred.

51.     Plaintiff is entitled to indemnification and payment from defendant at this time, and there is no valid or legal barrier to such indemnification and payment taking place forthwith.

### COUNT I:  BREACH OF CONTRACT

52.     Plaintiff repeats and realleges Paragraphs 1 through 51 above.

53.     Endorsement 6 is a nullity and is void as to plaintiff because:

      (a)     It was not approved or executed by plaintiff as an Insured Person and intended beneficiary of the Policy, nor was it approved or executed by a duly authorized agent of plaintiff; and/or

      (b)     It improperly attempts to modify insurance coverage to which plaintiff was an insured and intended beneficiary, after the events for which the Illinois Union Policy provided coverage had occurred.

54.     Accordingly, plaintiff is entitled to a declaration that Endorsement No. 6 is null and void, or alternatively that those parts of Endorsement No. 6 which purport to limit or restrict the coverage provided to plaintiff are null and void.

55.     Plaintiff has performed all terms and conditions of the Illinois Union Policy on his part to be performed.

56.     Despite plaintiff's demand for coverage and indemnification, defendant has declined to indemnify plaintiff, in violation of plaintiff's rights under the Illinois Union Policy.

57.     Defendant has breached the Illinois Union Policy by refusing to indemnify plaintiff for his Losses.

58.     Plaintiff has suffered damages, and continues to suffer damages as a result of defendant's breach of contract.

### COUNT II:  BREACH OF COVENANT
### OF GOOD FAITH AND FAIR DEALING

59.     Plaintiff repeats and realleges Paragraphs 1 through 51 above.

60.     Defendant's conduct as alleged herein is a breach of the implied covenant of good faith and fair dealing, with regard to the Illinois Union Policy.

61.     Plaintiff has been damaged as a direct and proximate result of the foregoing breach of the implied covenant of good faith and fair dealing.

## COUNT III:   BAD FAITH CAUSE OF ACTION

62.     Plaintiff repeats and reallages Paragraphs 1 through 51 above.

63.     Defendant's conduct as alleged herein constitutes bad faith with regard to its efforts to avoid providing plaintiff with coverage under the Illinois Union Policy.

64.     Plaintiff has been damaged as a direct and proximate result of the foregoing bad faith conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests that the Court enter judgment in his favor and against defendant:

(a) on Counts I through III, awarding plaintiff damages consisting of:

(i) his unreimbursed Defense Costs in an amount to be proven at trial, but not less than $1,989,744;

(ii) his unreimbursed settlements totaling $16,595.000; and

(iii) his legal fees and expenses incurred in having to prosecute litigation against Tyco for indemnification;

(b) on Count I declaring Endorsement No. 6 a nullity, or alternatively, declaring that those parts of Endorsement No. 6 which purport to limit or restrict the coverage provided to plaintiff are null and void; and

(c) awarding plaintiff pre-judgment and post-judgment interest, costs, attorneys' fees, and such other and further relief as the Court deems just and proper.

Dated: New York, New York
      June 24, 2010

                                        Respectfully submitted,

                                        WARNER PARTNERS, P.C.
                                        *Attorneys for Plaintiff*

                                        By: _____
                                              Kenneth E. Warner

                                        950 Third Avenue
                                        New York, New York 10022
                                        (212) 593-8000